UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | Crim. No. 20-232 (JRT/BRT) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| (19) Amondo Antoine Miller, | |
| Defendant. | |

---

Harry Jacobs, Esq., Joseph H. Thompson, Esq., and Matthew S. Ebert, Esq., United States Attorney's Office, counsel for Plaintiff.

Robin M. Wolpert, Esq., Sapientia Law Group, PLLC, counsel for Defendant Miller.

---

BECKY R. THORSON, United States Magistrate Judge.

On October 20, 2020, Defendant Amondo Antoine Miller was indicted on one count of conspiracy to commit mail fraud and six counts of wire fraud, along with forty-two other Defendants in an alleged nationwide conspiracy to commit mail and wire fraud in the telemarketing of magazine subscriptions. (Doc. No. 15, Indictment.) This matter is now before the Court on Defendant Miller's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, wherein he seeks to suppress evidence obtained through the execution of two search warrants – one for his business premises on Hampden Avenue in Denver, Colorado (Gov't Ex. 6), and the other for information in the servers that are

associated with his email address magsolutions1@aol.com (Gov't Ex. 10).[1] (*See* Doc. No. 1027, Def. Miller's Mot to Suppress.) The Court held a hearing on the matter on March 3, 2022, and ordered supplemental post-hearing briefing. (Doc. No. 1167.) On April 14, 2022, Defendant Miller filed his supplemental brief (Doc. No. 1185), and on May 5, 2022, the Government filed a response opposing the motion. (Doc. No. 1196.)

This matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. For the reasons stated below, this Court recommends that Defendant Miller's motion be denied.

## DISCUSSION

### I.   Probable Cause Standard

The Fourth Amendment requires probable cause to be shown before a search warrant is authorized. U.S. Const. amend. IV; *United States v. Williams*, 477 F.3d 554, 557 (8th Cir. 2007). In determining whether probable cause exists, a detached and neutral judge must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998) ("The standard of probable cause for the issuing judge is whether, given the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (quotations omitted)). "[P]robable cause is a fluid

---

[1]   This Court refers to the Exhibit numbers as reflected on the March 3, 2022 Hearing Exhibit List. (*See* Doc. No. 1168.)

concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. Courts should not review search warrants in a hyper-technical fashion. *United States v. Caswell*, 436 F.3d 894, 897 (8th Cir. 2006).

"When . . . the issuing court relies solely on an affidavit to determine whether probable cause exi[sts], only the information found within the four corners of the affidavit may be considered." *United States v. Wells*, 347 F.3d 280, 286 (8th Cir. 2003) (quotations omitted). In reviewing the decision of the issuing court, this Court must ensure that the court "'had a substantial basis for . . . conclud[ing] that probable cause exists.'" *United States v. Oropesa*, 316 F.3d 762, 766 (8th Cir. 2003) (quoting *Gates*, 462 U.S. at 238-39). Because reasonable minds may differ on whether a particular search-warrant affidavit establishes probable cause, the issuing court's determination is accorded great deference. *United States v. Wajda*, 810 F.2d 754, 760 (8th Cir. 1987) (citing *United States v. Leon*, 468 U.S. 897, 914 (1984)).

II.  **Analysis**

    a.  **Staleness**

Defendant Miller argues that the information referenced in both search warrant applications at issue was stale. The search warrant application for Defendant's email account was presented and issued on October 8, 2019, and the search warrant for Defendant's business premises was presented and issued on February 11, 2020. (Gov't Exs. 6, 10.) "A warrant becomes stale if the information supporting the warrant is not sufficiently close in time to the issuance of the warrant and the subsequent search

conducted so that probable cause can be said to exist as of the time of the search." *United States v. Colbert*, 828 F.3d 718, 727 (8th Cir. 2016) (quotations omitted). However, "there is no bright-line test for determining when information is stale." *United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998).

In 2019 and throughout 2020, law enforcement officers investigated Defendant Miller, along with forty-two other Defendants as part of a years-long investigation into a nationwide conspiracy to commit mail and wire fraud in the telemarketing of magazine subscriptions. The search warrants for Defendant Miller's email account and business premises were supported by lengthy affidavits that provided substantial detail into the full investigation of the nationwide magazine sales fraud scheme. The warrants included various information supporting scam activity relating to many different fraudulent magazine companies and individuals working with those companies over the course of several years as well as information showing how information was shared between companies and individuals.[2]

Defendant Miller argues that the information in the application for the search warrant regarding the email account was stale because the affidavit referred to emails sent to and from Defendant Miller's account beginning in 2015, "with the last date of

---

[2]   The affiant for the email warrant affidavit was U.S. Postal Inspector John Western, who had been employed with the United States Postal Inspection Service for approximately twelve years and was assigned to the Mail Fraud Team at the Denver Division, Twin Cities Field Office in Minneapolis, Minnesota. (Gov't Ex. 10 at ¶ 1.) The affiant for the business premises warrant affidavit was U.S. Postal Inspector Kyle Stines, who had been employed with the United States Postal Inspection Service since 2015 and was assigned to the External Crimes Team at the Denver Division Headquarters in Denver, Colorado. (Gov't Ex. 6 at ¶ 1.)

communication occurring four months before the search warrant was issued on October 8, 2019." (Doc. No. 1185 at 3–4.) With respect to the business premises warrant, Defendant Miller argues that the information in the application was stale because "documentation in the Application for the search of the Premises of his alleged criminal involvement started in the fall of 2017 . . . and continued into the fall of 2019, roughly 6 months before the issuance of the Warrant." (Doc. No. 1028 at 8.)

It is evident from the search warrant affidavits that the investigation was a lengthy one that involved continuing criminal activity, where evidence of the magazine fraud scheme spanned years and involved various types of evidence. Where continuing criminal activity is suspected, the passage of time is less significant.[3] *Formaro*, 152 F.3d

---

[3]   This Court notes that the business premises warrant also included relevant information about Defendant Miller and his magazine company from January 2020, which was one month before the premises warrant issued:

> 10.   On or about January 2, 2020, investigators conducted surveillance of Amondo Miller. Miller was seen driving and entering . . . the building in which the Subject Premises is located.
>
> 11.   In January 2020, a Confidential Informant ("CI") applied for a position at Magazine Solutions.[] The CI was in contact with Amondo Miller about securing employment at Magazine Solutions. Amondo Miller told the CI there would be a training at the Subject Premises. The CI went to the Subject Premises and met with a woman named Kiley, who said she worked for Amondo Miller at the Subject Premises. The CI believed that Kiley had been in contact with Miller about the type of training that the CI was to receive. While at the Subject Premises, the CI received training on how to call people on behalf of Magazine Solutions and secure credit card information in order to sell magazines.

(Gov't Ex. 6 at ¶¶ 10–11.)

at 771. In addition, "[a] law enforcement official is not required to include everything he knows about a subject in his affidavit, whether it is material to a finding of probable cause or not." *Technical Ordinance, Inc. v. United States*, 244 F.3d 641, 649 (8th Cir. 2001); *see also United States v. Jones*, No. 10-336 (JNE/AJB), 2011 WL 1837861, at *4 (D. Minn. Mar. 31, 2011) ("Reasonable inferences may be drawn from the totality of circumstances in determining whether probable cause to issue a warrant exists.") (citing *United States v. Wallace*, 550 F.3d 729, 732 (8th Cir. 2008)).

Here, considering the nature of the investigation (i.e., a nationwide magazine sales fraud scheme evidenced through years of continued criminal activity), the four- to six-month-old information in the search warrant affidavits was not stale. The Eighth Circuit has upheld search warrants with time lapses of similar durations. *See United States v. Horn*, 187 F.3d 781, 785 (8th Cir. 1999) (concluding that information in a warrant for child pornography was not stale when the information was three to four months old); *United States v. Maxim*, 55 F.3d 394, 396-97 (8th Cir. 1995) (holding that four-month-old information supplied probable cause for a warrant to search the home of someone suspected of illegal possession of a firearm); *United States v. Reyes*, No. 00-344(8) (ADM/AJB), 2001 WL 1631326, at *2 (D. Minn. July 26, 2001), *aff'd*, 41 F. App'x 22 (8th Cir. 2002) (finding six-month-old information about money laundering was not stale). In fact, the Eighth Circuit has also upheld search warrants with much longer time periods between information gathering and warrant issuance than the timing in the present case. *See United States v. Nealy*, No. 4:04CR00274-02 (JLH), 2009 WL 481735, at *7 (E.D. Ark. Feb. 25, 2009) (holding that information about loan and credit

application fraud and wire fraud from 16 months before the search warrant was issued was not stale); *see also United States v. Lemon*, 590 F.3d 612, 614 (8th Cir. 2010) (upholding a search warrant issued 18 months after discovery of information related to possession of child pornography). Therefore, Defendant Miller's argument that the warrants lack probable cause because of stale information fails.

    b.  **Nexus**

Defendant Miller also argues that the warrant applications for the warrants to search the email account and the business premises did not establish a nexus between the place to be searched and any criminal activity attributable to Defendant Miller. A search warrant application must establish a nexus between evidence of a crime and the place to be searched, such that there is a "fair probability" to believe evidence will be found in the place. *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000). The "requisite nexus" between the place to be searched and the evidence sought depends on the nature of the crime, reason, and logic. *United States v. Etheridge*, 165 F.3d 655, 657 (8th Cir. 1999).

The references to Defendant Miller in the affidavits cannot be taken out of context but read along with the totality of circumstances described in the affidavits, which included significant information detailing evidence of the ongoing magazine fraud by many individuals and many companies. This information included information that linked the suspected criminal activity both with Defendant Miller's email account and with Defendant Miller's business premises.

For example, the affidavit for the email search warrant explains that Defendant Miller communicated via email with Individual A, a known participant in the fraudulent

scheme, from 2013 to 2015 regarding lead lists.[4] (Gov't Ex. 10 at ¶ 82.) Individual A reported that he had purchased hard-copy lead lists from Defendant Miller in the past. (Gov't Ex. 10 at ¶ 81.) The affidavit also explains that Defendant Miller communicated via email with co-Defendant Cox, discussing, negotiating, and selling PDS sales lead lists in 2018 and 2019.[5] (Gov't Ex. 10 at ¶ 84.) In addition, the affidavit also describes

---

[4]     Individual A and his company Your Magazine Service, Inc. were sued by the Minnesota Attorney General's Office in June 2016 for violating the Minnesota Consumer Fraud Act and several other state consumer protection statutes. (Gov't Ex. 10 at ¶ 9.) That complaint alleged that Individual A "operated a telemarketing scheme that preyed upon customers—many of them elderly—in order to lure them into unknowingly signing up for expensive magazine subscription packages." (*Id.*) In November 2017, summary judgment was granted in favor of the Minnesota Attorney General's office. (*Id.* ¶ 10.) During the time of that lawsuit, the FBI and U.S. Postal Inspection Service began investigating Individual A and his company. (*Id.* ¶ 11.) In December 2018, Individual A was indicted on four counts of mail fraud and four counts of wire fraud. (*Id.* ¶¶ 8, 26.) After the indictment, Individual A agreed to give a proffer interview at the U.S. Attorney's Office; at that interview, Individual A admitted that he ran his company in a fraudulent manner, explained that there were another ten to fifteen fraudulent magazine companies operating in Minnesota, and stated that there were fraudulent magazine companies operating all over the country, including in south Florida and near Kansas City. (*Id.* ¶ 27.) Individual A also stated that "obtaining customer or 'lead' lists was a key component of his scheme." (*Id.* ¶ 29.) A lead list is "a list of potential customers that salespeople will call to attempt to make a sale, often relying on a pre-written sales script." (*Id.*) Individual A stated that "he and other fraudulent magazine companies shared 'lead' lists, which they exchanged both in hard copy and via email" and they "used the information from the lead lists to trick the customers into unknowingly signing up for multiple expensive magazine subscription packages." (*Id.* ¶ 30.)

[5]     The affidavit states as follows:

> According to Individual A, Brian Cox is the owner of Mater Marketing, a Georgia-based marketing firm that sells lead lists to magazine companies. Individual A explained that Cox sells lead lists for "Paid-during-service" or "PDS" sales, which are lists of individuals with existing magazine subscriptions. According to Individual A, . . . magazine companies use the information on these lead lists and lead sheets to fraudulently trick

evidence that individuals had filed twelve complaints with the Better Business Bureau against Defendant Miller's business Magazine Solutions between 2017 and 2019, and the complaints related to activity consistent with the suspected magazine fraud scheme. (Gov't Ex. 10 at ¶ 91.) Further, Defendant Miller's LinkedIn profile indicated that he was the Owner of Power Sales and Marketing, a company involved in selling lists of sales leads. (Gov't Ex. 10 at ¶ 83.) What is required for the search warrant to be constitutionally valid is a "fair probability" to believe—based on the search warrant affidavit—evidence will be found in the email account. *Tellez*, 217 F.3d at 550. This Court concludes that the totality of the information in the affidavit provided support for a fair probability that evidence of the magazine fraud scheme would be found in the data recovered from Defendant Miller's email account.

    The affidavit supporting the business premises warrant similarly provides sufficient probable cause. In addition to including some of the same information as that explained in the email warrant affidavit, and additional detail explaining the full investigation of the nationwide magazine sales fraud scheme, including the information referenced about Individual A and co-Defendant Cox, this affidavit included information explaining that Defendant Miller, along with his wife, are owners of the magazine sales company Magazine Solutions, that Defendant Miller also owned the company Power Sales, which was involved in selling lists of sales leads, and that both of these companies

---

    consumers into unwittingly signing up for additional and expensive new magazine subscription packages.

(Gov't Ex. 10 at ¶ 52.)

9

were located at the subject premises. (Gov't Ex. 6 at ¶ 8; *see also id.* ¶ 9 (stating that Magazine Solutions' principal place of business is at the subject premises according to the Colorado Secretary of State records).) The affiant explains that investigators saw Defendant Miller enter the building in which the business premises is located on or about January 2, 2020. (Gov't Ex. 6 at ¶ 10.) And, as referenced above, the confidential informant applied for a position at Magazine Solutions and went to the business premises and received training on how to sell magazines on behalf of Magazine Solutions in January 2020. (Gov't Ex. 6 at ¶ 11.)

Based on the above, along with the additional information in the application describing the suspected magazine fraud scheme, this Court concludes that the warrant application for the business premises provides the required nexus and the totality of the information provided supports finding the warrant is supported by probable cause. Therefore, this Court recommends that Defendant Miller's motion should be denied.

  c. *United States v. Leon*

Finally, even if probable cause did not exist, these were facially valid warrants, and therefore the good-faith exception to the exclusionary rule, established in *United States v. Leon*, 468 U.S. 897 (1984), would have to be considered. "Under the good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's]

10

authorization." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (alteration in original) (quotations omitted). "When assessing the objective [reasonableness] of police officers executing a warrant, [the Court] must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge." *Id.* at 431 (alteration in original) (quotations omitted). Here, this Court concludes that the good-faith exception would apply to the search warrants for the email account and the business premises. There is no evidence to suggest that the officers' reliance on the warrants was not in good faith, nor is there evidence that the officers' reliance was not reasonable. For these reasons, this Court concludes that the evidence seized as a result of the execution of the search warrants should not be suppressed and Defendant's motion should be denied.

## RECOMMENDATION

Based on the file, record, and proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Miller's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 1027) be **DENIED**.

Date: May 31, 2022

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b), any party may file and serve specific written

objections to this Report and Recommendation by **June 14, 2022**. A party may respond to those objections by **June 28, 2022**. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 7 days from the date of its filing. If timely objections are filed, this Report will be considered under advisement from the earlier of: (1) 7 days after the objections are filed; or (2) from the date a timely response is filed.