**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Crim. No. 20-232(19) (JRT/BRT) |
| v. | **MEMORANDUM OPINION AND ORDER OVERRULING DEFENDANT'S OBJECTIONS AND ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |
| AMONDO ANTOINE MILLER | |
| Defendant. | |

Harry Jacobs, Joseph H. Thompson, and Matthew S. Ebert, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Robin M. Wolpert, **SAPIENTIA LAW GROUP PLLC**, 120 South Sixth Street, Minneapolis, MN 55402, for defendant.

Defendant Amondo Antoine Miller was indicted on one count of conspiracy to commit mail fraud and six counts of wire fraud, along with forty-two other defendants in an alleged nationwide fraudulent magazine sales scheme. On October 8, 2019, a search warrant was issued to search Miller's email account used in connection with his company Magazine Solutions. On February 11, 2020, another search warrant was authorized to search the business premises of Magazine Solutions, located on Hampden Avenue in Denver, Colorado. Miller filed a Motion to Suppress evidence obtained during both search warrants. Magistrate Judge Becky Thorson heard the motion and recommended that the Motion to Suppress be denied. Because the search warrants are supported by

probable cause, the information contained therein is not stale, and the warrants established a sufficient nexus, the Court will deny Miller's Motion to Suppress.

## BACKGROUND

### I.     FACTUAL BACKGROUND

There are two search warrants at issue in this case.  The first was issued on October 8, 2019 and was a search warrant for Miller's email account: magsolutions1@aol.com. (Resp. Mot., Ex. J ("Email Search Warrant"), Dec. 29, 2021, Docket No. 1068-10.)  The Email Search Warrant sought production of all the emails and records stored with the email provider and specifically detailed the types of information the government would seize.  (*Id.* at 3–5.)

The Email Search Warrant was supported by a lengthy affidavit by Postal Inspector John Western.  (*Id.*)  The affidavit described the years long investigation into a nationwide telemarketing fraud scheme.  (*Id.* ¶ 7.)  Four pages of the affidavit explicitly discuss both Miller and his use of the email address.  (*Id.* ¶¶ 81–91.)  The affidavit for the Email Search Warrant stated that according to Individual A, a known participant in the fraudulent magazine sales scheme, Miller works for a magazine business in Colorado and had sold hard-copy lead lists to Individual A in the past.  (*Id.* ¶ 81.)  Miller's wife is the registered agent for a company called Magazine Solutions.  (*Id.* ¶ 83.)  A review of Individual A's emails showed communications between Individual A and Miller, using the "magsolutions" email address, discussing lead lists between 2013 to 2015.  (*Id.* ¶ 82.)  The

affidavit provides several examples of those emails.  (*Id.*)  The affidavit further discusses emails found between co-defendant Brian Cox and Miller, using the "magsolutions" email address, in 2018 and 2019 discussing, negotiating, and selling sales lead lists.  (*Id.* ¶ 84.)  The most recent email between Cox and Miller appears to have been on June 11, 2019, four months prior to the issuance of the Email Search Warrant.  (*Id.* ¶ 90.)  Lastly, the affidavit states that twelve complaints had been filed with the Better Business Bureau ("BBB") against Magazine Solutions over the past three years.  (*Id.* ¶ 91.)

The second search warrant that Miller challenges is one for the business premises of Magazine Solutions, located on Hampden Avenue, which was issued on February 11, 2020.  (Resp. Mot., Ex. F ("Business Premises Search Warrant"), Dec. 29, 2021, Docket No. 1068-6.)  The Business Premise Search Warrant sought permission to search the offices of Magazine Solutions located on Hampden Avenue in Denver, Colorado.  (*Id.*)  This warrant was supported by a lengthy affidavit from Postal Inspector Kyle Stines.  (*Id.* at 10.)  The Business Premises Search Warrant also detailed the years long investigation into a nationwide telemarketing fraud scheme.  (*Id.* ¶ 15.)  The affidavit discussed the ways in which Miller was implicated in the fraudulent scheme, including the emails discovered between Miller and other known participants of the scheme.  (*See, e.g.*, *Id.* ¶¶ 107–27.)  According to the Colorado Secretary of State, Magazine Solutions' principle place of business was listed as the Hampden Avenue address.  (*Id.* ¶ 9.)  On or about January 2, 2020, investigators conducted surveillance of Miller and saw him entering the building on

3

Hampden Avenue.  (*Id.* ¶ 10.)  In January 2020, a Confidential Informant ("CI") applied for a position at Magazine Solutions.  (*Id.* ¶ 11.)  Miller told the CI there would be a training at the Hampden Avenue address which the CI attended.  (*Id.*)  While at the Hampden Avenue address, the CI received the training on how to call people on behalf of Magazine Solutions.  (*Id.*)

## II.   PROCEDURAL HISTORY

On October 20, 2020, Miller was indicted on one count of conspiracy to commit mail fraud, and six counts of wire fraud along with forty-two other defendants. (Indictment, Oct. 20, 2020, Docket No. 15.)  Miller filed a Motion to Suppress Evidence obtained in the two search warrants.  (Mot. Suppress, Nov. 16, 2021, Docket No. 1027.) The Magistrate Judge took the motions under advisement and issued a Report and Recommendation ("R&R") recommending that the motion be denied.  (R&R, May 31, 2022, Docket No. 1204.)   Miller has now filed objections to the Magistrate Judge's recommendation.  (Obj. R&R, June 14, 2022, Docket No. 1212.)

## ANALYSIS

## I.   STANDARD OF REVIEW

After a magistrate judge files an R&R, a party may "serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b).  "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for

those objections." *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008). For dispositive motions, the Court reviews de novo a "properly objected to" portion of an R&R. Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3). "Objections which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to de novo review, but rather are reviewed for clear error." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015).

## II.    DISCUSSION

Miller objects to the Magistrate Judge's conclusions that the information in the search warrants was not stale and established a sufficient nexus.[1] Miller also objects to the Magistrate Judge's conclusion that the *Leon* good-faith exception to the exclusionary rule would apply to the Email Search Warrant.

### A. Staleness

Miller contests that the information in both search warrants was stale. "A warrant becomes stale if information supporting the warrant is not sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search." *United States v. Colbert*, 828 F.3d 718, 727 (8th Cir. 2016). There is no bright-line test, but factors to consider include the lapse of time since the warrant was issued, the nature of the criminal activity, and the kind of

---

[1] Miller did not raise an argument, in his original briefing or his objections, that the Email Search Warrant was overbroad nor did the Magistrate Judge discuss it in her R&R. The Court cannot, therefore, review this issue although it notes that the Email Search Warrant was similar to that issued in co-defendant Rhonda Moulder's case.

property subject to the search.  *Id.; United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998).

As to the Business Premises Search Warrant, though emails in that warrant were six-months old, there was recent information in the affidavit that supported the issuance of the warrant.  Magazine Solutions' registered address was the Hampden Avenue location.  In January 2020, one month prior to the issuance of the warrant, agents observed Miller entering the Magazine Solutions building.  And even more significantly, in January 2020, again one month prior to the issuance of the warrant, a CI applied for a position at Magazine Solutions and then went to the Hampden Avenue address, upon instruction from Miller, to receive training.  Further, considering the nature of this investigation—that it spanned several years and was a nationwide investigation with many defendants—a six-month old email regarding Miller's involvement in the scheme is not stale.

The information in the Email Search Warrant was also not stale.  Miller's staleness argument would certainly be stronger if the affidavit pointed to emails from 2013–2015.  But the affidavit details much more including emails between Miller and co-defendant Cox beginning in December 2018 and continuing all the way through June 2019 regarding lead lists.  The string of emails between 2018 to 2019 demonstrate activity of a continuous nature.  As such, the passage of time between the latest email in June 2019 and the issuance of the Email Search Warrant four months later is less significant.  *United States*

*v. Jones*, 801 F.2d 304, 314 (8th Cir. 1986).  The Eighth Circuit has upheld search warrants with similar or even more significant time lapses.  *See United States v. Horn*, 187 F.3d 781, 786 (8th Cir. 1999) ("We have . . . held that information four months old, or even three years old, may supply probable cause for a warrant[.]"); *see also United States v. Lemon*, 590 F.3d 612, 614 (8th Cir. 2010) (upholding search warrant based on information from eighteen months prior).

Furthermore, the complaints to the BBB between 2017 through 2019 provide evidence that there was a fair probability that evidence of the crime would be found in Miller's email account.  The complaints to the BBB all related to behavior similar to the conduct under investigation in the fraudulent magazine sales scheme.  Lastly, given the lengthy nature of the criminal investigation which spanned several years and involved many individuals, it is unsurprising that time lapsed before the search warrant was issued.

The Court finds that neither the information in the Business Premises Search Warrant nor the Email Search Warrant was stale.  The Court will, therefore, overrule Miller's objections and adopt the Magistrate Judge's conclusion as to staleness.

**B.  Nexus**

Miller objects to the Magistrate Judge's conclusion that a nexus was established in both search warrants.  Before a search warrant may be issued, there must be evidence of a nexus between the contraband and the place to be searched.  *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000).  There must be a "fair probability" that evidence of

criminal activity will be found in a particular place.  *Id.*  "The requisite nexus . . .  is determined by the nature of the crime and the reasonable, logical likelihood of finding useful evidence."  *United States v. Etheridge*, 165 F.3d 655, 657 (8th Cir. 1999).

Miller takes issue with the fact that there are only four pages in the Email Search Warrant that specifically reference him and asserts that those references do not establish a link to his email account.  But the information within those four pages sufficiently establishes a "fair probability" that evidence of the years long fraudulent magazine sales scheme could be found at that email address.  The affidavit demonstrated that the email was used to communicate with known participants in the fraudulent magazine sales scheme in both 2013 to 2015 and 2018 to 2019.  Those communications related to sales of lists of individuals with magazine subscriptions—which were frequently used to commit fraud.  Additionally, twelve complaints had been filed with the BBB between 2017 and 2019 against Magazine Solutions, complaining of activity similar to the activity under investigation in this case.

The evidence in the affidavit sufficiently described a link between Miller, Magazine Solutions, and the email at issue, it contained information regarding how Miller used that email address to communicate with known participants in the fraudulent magazine sales scheme, and it detailed how complaints were raised against Miller's company for activity identical to that at issue in the larger investigation.  Based upon the totality of the evidence in the Email Search Warrant, there was a "fair probability" or a "logical

likelihood" that evidence of the fraudulent magazine scheme would be found in Miller's email.

The nexus between the suspected criminal activity and the Hampden Avenue address is still more clear. The Business Premises Search Warrant details the nationwide investigation and links Miller to known participants in the fraudulent magazine sales scheme. It also demonstrates that he was involved in the sale of lead lists and had several complaints filed against him with the BBB. Magazine Solutions, which was registered to Miller's wife and involved in the sale of lead lists, was located at the Hampden Avenue address. Agents observed Miller entering that building. Lastly, a CI was hired by Magazine Solutions and attended a training at the Hampden Avenue address, as directed by Miller. This evidence sufficiently establishes that there is a fair probability evidence of the fraudulent magazine sales scheme would be located at the Hampden Avenue address.

In sum, both search warrants contained information that was not stale and provided a sufficient nexus between the suspected criminal activity and place to be searched. As such, both search warrants were supported by probable cause. The Court will overrule Miller's objections, adopt the Magistrate Judge's recommendation, and deny Miller's Motion to Suppress Evidence Obtained as a Result of Search and Seizure.

### C. *Leon* Good-Faith Exception

Additionally, Miller objects to the Magistrate Judge's finding that the good-faith exception to the exclusionary rule applied to the Email Search Warrant.[2]  Even if the Email Search Warrant was not supported by probable cause, the good-faith exception to the exclusionary rule, established in *United States v. Leon*, is applicable here.  Under the *Leon* good-faith exception, evidence obtained pursuant to a warrant later determined to be invalid under the Fourth Amendment is admissible if the executing officer's reliance on the issued warrant, and belief that the warrant was valid, were reasonable.  *United States v. Leon*, 468 U.S. 897, 921–24 (1984).  The good-faith exception does not apply if (1) the judge was misled by statements the affiant knew or would have known were false; (2) the magistrate wholly abandoned their judicial role; (3) the affidavit is so lacking in indicia or probable cause as to render an officer's belief entirely unreasonable; or (4) the warrant is so facially deficient that an executing officer cannot reasonably presume it to be valid. *United States v. Lindsey*, 284 F.3d 874, 878 (8th Cir. 2002).

Miller argues that it was objectively unreasonable for Inspector Western and those executing the Email Search Warrant to believe that the affidavit, which relied so heavily on stale information lacking a clear nexus to the email account, was supported by probable cause.  Miller relies primarily on the fact that Inspector Western, having thirteen

---

[2] The Magistrate Judge also held it applied to the Business Premises Search Warrant, but Miller did not object to that conclusion.  As such, the Court adopts the Magistrate Judge's analysis of that issue.

years of experience, should have known the warrant was insufficient. The Court disagrees. The Email Search Warrant was accompanied by a lengthy and detailed affidavit and was authorized by a magistrate judge. The affidavit was detailed as to the entire nature of the investigation and contained specific links to Miller. Simply because Inspector Western has significant experience in his job does not, by itself, indicate that it would be unreasonable for him to believe the warrant was valid. It is hard to imagine that no reasonable officer would have relied in good-faith on the Email Search Warrant. As such, the Court finds that the *Leon* good-faith exception to the exclusionary rule applies and will overrule Miller's objection and adopt the Magistrate Judge's conclusion.

## CONCLUSION

The Court overrules Miller's objections to the Magistrate Judge's R&R, adopts the R&R in full, and denies Miller's Motion to Suppress Evidence Obtained As a Result of Search and Seizure.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Defendant's Objections to the Report and Recommendation [Docket No. 1212], and **ADOPTS** the Report and Recommendation of the Magistrate Judge [Docket No. 1207]. **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Suppress Evidence Obtained As a Result of Search and Seizure [Docket No. 1027] is **DENIED**;

DATED: August 24, 2022
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge